Andrew W. Stavros (8615)
Austin B. Egan (13203)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: 801.758.7604
andy@stavroslaw.com
austin@stavroslaw.com
*Attorneys for Robert Byron*

## IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT BYRON,<br><br>     Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF UTAH,<br>LORI MCDONALD, in her official capacity,<br>and RUTH WAKINS, in her official capacity,<br><br>     Defendants. | **COMPLAINT**<br><br>Case No. 2:20-cv-00290-DBB<br><br>Judge David Barlow |

Plaintiff Robert Byron, by and through his counsel of record, brings this Complaint against Defendant University of Utah.

### PRELIMINARY STATEMENT

1.      This is an action alleging deprivation of Mr. Byron's procedural and substantive due process rights in violation of 42 U.S.C. § 1983.

### PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Robert Byron ("Byron") is a resident of Salt Lake County, State of Utah.

3.      Defendant University of Utah ("University") is a state institution of higher

1

learning pursuant to Utah Code Ann. § 53B-2-101.

4. Defendant Lori McDonald ("McDonald") is the University's Vice President of Student Affairs.

5. Defendant Ruth Watkins ("Watkins") is the University's President.

6. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7. The unlawful acts and omissions giving rise to this action occurred in Salt Lake County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division.

8. This action is properly brought in the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) because claims asserted herein arose in this judicial district. Accordingly, venue is proper pursuant to 28 U.S.C. §§ 125 and 1391.

## FACTUAL ALLEGATIONS

9. Mr. Byron began attending the University's School of Medicine in the 2018-2019 academic year. He has diligently completed his coursework and has shown tremendous potential for a career as a medical doctor.

10. On or about September 16, 2019, Jane filed a sexual misconduct complaint against Byron with the University's Office of Equal Opportunity and Affirmative Action ("OEO"). Jane's complaint arises out of events she alleges took place on April 5, 2019. Many of the allegations in Jane's Complaint are exaggerated, embellished, or entirely false.

11. The OEO then ostensibly investigated Jane's allegations. On or about December 6, 2019, the OEO issued a memorandum wherein it concluded that "cause" existed to find that

Byron engaged in "sexual misconduct" in the forms of "nonconsensual sexual contact" and "nonconsensual sexual penetration," as those terms are defined in University Rule 1-012(II).

12. Mr. Byron timely appealed the OEO's findings and conclusions and requested a hearing in accordance with University Rule 1-012B.

13. Under University Rule 1-012B, when a timely request for a hearing is filed, the OEO then convenes a hearing committee (the "Committee"). The Committee consists of five panel members.

14. Under the procedures for the hearing, participants may be assisted by an "advisor," but the advisor may not participate in the hearing.

15. The hearing procedures permit each party to make an opening statement, present evidence, question witnesses (but cross-examination of an adverse witness is only permitted by directing questions to the Committee Chair, who may then decide, at his/her sole discretion, whether to ask the question), and closing remarks. In total, each party is limited to 45 minutes for his/her respective "presentation."

16. On February 14, 2020, Byron and Jane (through their respective counsel) submitted pre-hearing disclosures of witnesses and exhibits. Among Byron's exhibits was a letter from Dr. Adam Stevenson, the Associate Dean of Student Affairs for the University's School of Medicine.

17. In his letter, Dr. Stevenson noted that a medical student's leave of absence must be reported to the Association of American Medical Colleges (AAMC), recorded in the student's official academic record, and noted in the student's Medical Student Performance Evaluation

(MSPE), which is sent to every residency program the student applies to during their fourth and final year of medical school.

18. In his letter, Dr. Stevenson further noted that a leave of absence for behavioral misconduct "significantly decreases the probability of a medical student matching into a residency to the point of being essentially *impossible*." (emphasis added.)

19. On February 21, 2020, the hearing took place before the Committee. During the hearing, Byron was permitted only 45 minutes to present his responses and defenses to the allegations. In contrast, the OEO was permitted 45 minutes to present its case against Byron, and Jane was permitted 45 minutes to present her case against Byron. In other words, the complaining parties (the OEO and Jane) were granted 90 minutes to present allegations and evidence against Byron. This disparity make the hearing procedure inherently unfair.

20. On February 27, 2020, the Committee issued its report wherein they: (a) supported the finding that Mr. Byron engaged in "nonconsensual sexual contact" (as defined by University Policy); (b) found *insufficient evidence* that Mr. Bryron engaged "nonconsensual sexual penetration" (as defined by University Policy); (c) concluded that the proposed sanctions of no contact and referral for counseling were "within the range of reasonable sanctions"; and (d) did *not recommend* the proposed sanction of suspension for two years, based on the finding there was no nonconsensual sexual penetration. On the issue of sanctions, the Committee states in their report: "[T]he committee cannot recommend suspension given our divergent findings from the OEO/AA on whether Byron engaged in Nonconsensual Sexual Penetration."

21. The Committee's recommendation of a no-contact order and counseling was a sufficient sanction to ensure Byron and Jane would not interact with each other for the remainder of Jane's time as a medical student.

22. Under University Rule 1-012B, the Committee's report was submitted to Vice President McDonald. Thereafter, under Rule 1-012B, within 14 days, Vice President McDonald was required to issue a decision to include: (a) a determination of whether the evidence, evaluated under a preponderance of the evidence standard, supports a finding that Sexual Misconduct (as that term is defined in University Policy) occurred; and (b) a determination of whether the sanctions are reasonable in light of the circumstances. In other words, University Rule 1-012B requires the ultimate decisions on evidence and sanctions to be determined by the Vice President, who is not present for the hearing.

23. On March 13, 2020, Vice President McDonald issued her single-page written decision, wherein she "agree[d] with and affirm[ed]" the Committee's findings. However, despite the Committee's findings on sanctions, Vice President McDonald disregarded the Committee's finding on sanctions, and imposed a sanction of suspension for two years. In imposing that sanction, Vice President McDonald stated that a "standard sanction" for sexual misconduct cases involves suspension for "the period of time in which the complaining party can complete his/her/their course of study."

24. Pursuant to University Rule 1-012B, Mr. Bryon submitted his appeal of the Vice President's decision to President Watkins, who was also not present for the hearing.

25. Thereafter, in a cursory one-page letter dated April 2, 2020, President Watkins affirmed Vice President's McDonald's decision.

26. In issuing their one-page decisions and imposing the punitive sanction of suspension for two years, Vice President McDonald and President Watkins did not address, mention, analyze, or refer to Dr. Stevenson's letter or the implications thereof: that a two-year suspension essentially ends Byron's career in medicine. In their one-page decisions, neither Vice President McDonald nor President Watkins addressed the fact that the Committee concluded there was no "nonconsensual sexual penetration," and suspension was not warranted on that basis.

27. In their cursory, one-page decisions, Vice President McDonald and President Watkins also failed to acknowledge several mitigating factors, including: both parties were highly intoxicated; there were no physical injuries and there was no evidence of physical violence; Mr. Byron complied with Jane's request for no further touching once that request was made; and Mr. Byron showed remorse for his conduct at the hearing.

## CAUSE OF ACTION
**Deprivation of Byron's Procedural and Substantive Due Process Rights**
**42 U.S.C. § 1983**

28. Byron incorporates the allegations in the preceding paragraphs as if fully set forth herein.

29. In relevant part, 42 U.S.C. §1983 states the following:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the U.S. or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

30. The Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 7 of the Utah Constitution prohibit depriving any person of life, liberty, or property,

without due process of law.

31. Procedural due process ensures the government will not deprive a party of of a protected interest without engaging fair procedures to reach a decision. Substantive due process ensures the government will not deprive a party of a protected interest for an arbitrary reason regardless of the procedures used to reach that decision.

32. The Due Process Clause of the Fourteenth Amendment provides public university students with a protected property interest in continued education. The University cannot deprive Mr. Byron of his interest in continued education for reasons that are arbitrary or lacked a rational basis. The University also cannot deprive Mr. Byron's interest in continued education for reasons that "shock the conscience."

33. The University's policy permitting the Vice President to entirely disregard the Committee's finding on sanctions and impose a more severe sanction—practically amounting to expulsion—violated Mr. Byron's right to fair procedures in reaching a decision.

34. Vice President McDonald and President Watkins were not present for the hearing and were in no position to make evaluations of witness credibility.

35. Vice President McDonald and President Watkins (in their official capacities and on behalf of the University) imposed a sanction that essentially ends Mr. Byron's career as a medical student without any rational basis.

36. The summary decisions reached by Vice President McDonald and President Watkins did not include an analysis or evaluation all relevant evidence and mitigating factors in imposing a sanction. Their cursory, one-page decisions show that they did not properly analyze all relevant evidence and material facts. In more direct terms, the two-year suspension was

imposed for arbitrary reasons, and lacked any rational basis.

37. The two-year suspension (ending Byron's promising career in medicine) shocks the conscience, especially in light of the Committee's conclusion that Mr. Byron did not engage in "nonconsensual sexual penetration" as defined by University Policy.

38. The Committee's proposed sanction (no contact and referral for counseling) were more than sufficient to ensure Jane could continue her studies at the University safely.

39. In substituting their own judgment for the judgment of the Committee, without considering all relevant evidence and material facts, Vice President McDonald and President Watkins (in their official capacities and on behalf of the University) imposed a sanction that violated Byron's procedural and substantive due process rights. In issuing their decisions, Vice President McDonald and President Watkins were acting under the color of state law.

40. Mr. Byron has suffered damages caused by the deprivations set forth herein. As noted in Dr. Stevenson's letter, Mr. Bryon's two-year suspension will be reported to the Association of American Medical Colleges (AAMC). Mr. Byron's suspension will be recorded in his official academic record, and noted in his Medical Student Performance Evaluation (MSPE), which is sent to every residency program Byron would apply to during his fourth and final year.

41. And as Dr. Stevenson confirmed, Byron's suspension for behavioral misconduct makes it "essentially impossible" for him to match into a residency program. If Mr. Byron cannot match into a residency program, he cannot achieve his objective of becoming a licensed medical doctor.

42. In more direct terms, the harsh, oppressive, and shockingly disproportionate

sanction of suspension for two years effectively ends Mr. Byron's promising career in medicine. The suspension is essentially expulsion from the School of Medicine.

43. The deprivations set forth herein have caused Mr. Byron to suffer damages, including: (a) substantial future earnings as a physician; (b) consequential losses in the form all tuition payments all expenses he has incurred as a medical student to date; (c) harm to his reputation; and (d) severe emotional distress.

44. Mr. Byron also seeks recover of his attorney's fees pursuant to 42 U.S.C. § 1988(b).

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Mr. Byron demands a trial before a jury of his peers.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff Robert Byron requests judgment and relief against the Defendants as follows:

(1) A judgment ordering Mr. Byron's immediate reinstatement at the University's School of Medicine;

(2) A judgment awarding Mr. Byron all damages caused by the deprivations set forth herein;

(3) A judgment awarding Mr. Byron his reasonable attorney's fees and court costs, including any expert witness fees;

(4) A judgment awarding Byron prejudgment and post-judgment interest at the highest lawful rates; and

(5) A judgment awarding Byron such further and additional legal or equitable relief

as the Court deems appropriate.

Dated this 30th day of April, 2020.

                                  STAVROS LAW P.C.

                                  /s/ Austin B. Egan
                                  Austin B. Egan
                                  *Attorney for Robert Byron*