THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ROBERT BYRON,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH; LORI MCDONALD, in her official capacity; and RUTH WATKINS, in her official capacity,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [59] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00290-DBB<br><br>District Judge David Barlow |

Defendants University of Utah, Lori McDonald, and Ruth Watkins filed a Motion for Summary Judgment on Robert Byron's claims that the Defendants violated his constitutional procedural and substantive due process rights.[1] Because Byron's due process claims fail as a matter of law, the court GRANTS the Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Robert Byron was a student at the University of Utah medical school who began attending in 2018.[2] In 2019, another medical student ("Doe") filed a sexual misconduct complaint against Byron with the University's Office of Equal Opportunity and Affirmative Action.[3] The complaint alleged that Byron had engaged in both nonconsensual sexual contact and nonconsensual sexual penetration against Doe.[4]

---

[1] Defendants' Motion for Summary Judgment, ECF No. 59 at 1.
[2] Decl. of Robert Byron, ECF No. 72-3 at ¶ 2.
[3] *See* ECF No. 59-3 at 1.
[4] *Id.* at 7, 10.

The University's Office of Equal Opportunity ("OEO") investigated these allegations, and found by a preponderance of the evidence that "cause exists to find that [Byron] engaged in sexual misconduct in the form of Nonconsensual Sexual Contact and cause exists to find that [Byron] engaged in sexual misconduct in the form of Nonconsensual Sexual Penetration in violation of University Policy. . . ."[5] In the course of the review, the OEO interviewed Byron, Doe, five additional witnesses, and reviewed Doe's complaint, Byron's response, text messages between Byron and Doe, and text messages between Doe and another witness.[6]

The OEO sent the report to the University Dean of Students office to determine appropriate sanctions.[7] The Associate Dean of Students proposed the following sanctions: a two-year suspension from the University, a no contact order between Byron and Doe, and a referral to professional counseling services.[8] The proposed sanctions letter explained that "the rationale for this time frame [for the suspension] is informed by both the severity of the misconduct, and to allow [Doe] time to complete her coursework within the School of Medicine before you physically return to the University.[9] The proposed sanctions letter notified Byron of his right to request a hearing to review the proposed sanctions and the "cause" finding.[10]

Byron requested a hearing to challenge the OEO findings and the proposed sanctions.[11] At the hearing, each party has up to 45 minutes for opening statements, presentation of evidence, questioning witnesses, and concluding remarks.[12] Byron, through his attorney, had the

---

[5] *Id.* at 11.
[6] *Id.* at 2.
[7] Declaration of Brian Burton, ECF No. 59-6 at ¶¶ 8–11.
[8] ECF No. 59-7 at 2–3.
[9] *Id.* at 2.
[10] *Id.* at 2–3.
[11] ECF No. 59-9 at 2.
[12] ECF No. 59-3 at Procedure 1-012(III)(B)(5).

opportunity to question Doe and other witnesses through the committee chair.[13] The committee reviewed and considered Doe's initial complaint; the OEO report, including the witness statements and evidence considered by the OEO; Byron's response to the OEO report; additional evidence provided by Doe; additional evidence provided by Byron; and the statements, testimony, and responses to questions provided during the hearing.[14] The committee ultimately determined that the evidence, under a preponderance of the evidence standard, supported the finding that Byron engaged in nonconsensual sexual contact, but that there was insufficient evidence to support the finding that Byron engaged in nonconsensual sexual penetration.[15] With respect to the proposed sanctions, the committee reviewed the proposed sanctions and the Association of Title IX Administrators ("ATIXA") guidelines that outline mitigation factors, aggravating factors, and compounding factors.[16] The committee found that "the proposed sanctions [were] within the range of reasonable sanctions," but also found that it "cannot recommend suspension given [its] divergent findings from the OEO/AA on whether [Byron] engaged in Nonconsensual Sexual Penetration."[17]

The committee report was sent to Vice President of Student Affairs Lori McDonald for a final decision on findings and sanctions.[18] McDonald reviewed the committee report, the OEO report, the proposed sanctions, and the parties' submissions for the hearing.[19] In her decision, McDonald agreed with and affirmed the findings of the committee that, under a preponderance

---

[13] *Id.* at Procedure 1-012(III)(B)(4); ECF No. 59 at 11.
[14] ECF No. 59-9 at 3.
[15] *Id.* at 4.
[16] *Id.*
[17] *Id.*
[18] ECF No. 59-3 at Rule 1-012B(III)(J).
[19] ECF No. 59-14 at 2.

of evidence standard, Byron engaged in nonconsensual sexual contact.[20] McDonald also found that "the sanction of suspension for two years is reasonable in light of all the circumstances of this case."[21] She noted that "[i]t is a standard sanction of the University for sexual misconduct to suspend a perpetrator for the period of time in which the complaining party can complete his/her/their course of study."[22] McDonald's decision was sent to Byron and notified him of his right to appeal the decision to the University President Ruth Watkins.[23] Byron, through counsel, appealed McDonald's decision to President Watkins.[24]

Watkins reviewed McDonald's decision as well as all materials available to McDonald, the committee, and the OEO.[25] On April 2, 2020, Watkins affirmed McDonald's decision on the basis that "the university's policies and procedures were appropriately followed in this matter"; "[Byron's] account of events [did] not dispute the finding of nonconsensual sexual contact"; and "[Doe] indicate[d] that it remain[ed] deeply distressing to her to come into contact with [Byron]."[26]

On April 30, 2020, Byron filed a complaint against the University, McDonald, and Watkins for monetary and injunctive relief.[27] On June 24, 2020, this court issued an order denying Byron's motion for a temporary restraining order and preliminary injunction.[28] And on September 24, 2021, this court granted in part a motion for judgment on the pleadings dismissing

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] ECF No. 59-17 at 2.
[25] ECF No. 59-18 at 2.
[26] *Id.*
[27] Complaint, ECF No. 2 at 9.
[28] ECF No. 28 at 1.

Byron's claims for monetary damages against the Defendants.[29] Accordingly, the only remaining claims are Byron's procedural and substantive due process claims against the Defendants.

## STANDARD

A court grants summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[30] Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of any party."[31] The moving party is also entitled to summary judgment if "the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[32] Both evidence and reasonable inferences drawn from that evidence are construed in the light most favorable to the nonmovant.[33]

## DISCUSSION

Byron has two remaining claims, which seek injunctive relief for deprivation of his procedural and substantive due process rights.[34] The Defendants argue that they are entitled to summary judgment on these claims.[35] The court will address the claims in turn.

### I. The Defendants did not violate Byron's procedural due process rights because they provided an appropriate level of process.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."[36] "The fundamental requirement of due process is the

---

[29] ECF No. 74 at 1.
[30] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)
[33] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).
[34] ECF No. 2 at ¶¶ 28–44.
[35] ECF No. 59 at 1–2.
[36] *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[37] "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[38]

On the first prong of the procedural due process inquiry, the parties do not dispute that Byron had a protected property interest in his graduate education from a public university.[39] As such, resolution of Byron's procedural due process claim turns on the second prong: whether he was afforded an appropriate level of process.

In *Matthews v. Eldridge*, the Supreme Court recognized that due process is flexible and calls for such procedural protections as the situation demands; as such, the Court outlined three factors that courts should evaluate when considering whether an official action deprived an individual of due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[40]

In *Goss v. Lopez*, the Supreme Court held that, "[a]t the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be

---

[37] *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).
[38] *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (internal quotations omitted).
[39] *See, e.g.*, *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) ("As an initial matter, we note that Mr. Gossett had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution.").
[40] *Matthews*, 424 U.S. at 334–35.

6

given some kind of notice and afforded some kind of hearing."[41] In *Watson v. Beckel*, the Tenth Circuit, applying *Matthews* and *Goss* to consider an academic expulsion, found that notice was adequate when it allowed an individual to "prepare for the hearing and defend against the charges."[42] In *Watson*, the plaintiff had contended that a student facing a long-term suspension or expulsion must be afforded "written notice specifying the charges, legal counsel, the presentation of evidence, the right to cross-examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision,"[43] but the Tenth Circuit stated that "due process does not require all of these rights. . . ."[44]

Turning to the *Matthews* factors, the first factor is the private interest that will be affected by the official act.[45] Byron's private interest in his medical education is certainly significant, and Byron has presented evidence suggesting that a two-year suspension from medical school will effectively eliminate his ability to match into a residency program and pursue a career in clinical medicine.[46] Byron's private interest will be balanced against the other *Matthews* factors.

The second *Matthews* factor is the risk of an erroneous deprivation of Byron's property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.[47] Here, the University employed four levels of review in making a final determination: the OEO review,[48] the committee hearing,[49] the decision by McDonald,[50] and the

---

[41] *Goss v. Lopez*, 419 U.S. 565, 579 (1975).
[42] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1241 (10th Cir. 2001).
[43] *Id.* at 1242–43.
[44] *Id.* at 1243.
[45] *Matthews*, 424 U.S. at 334–35.
[46] ECF No. 73-5 at 2.
[47] *Matthews*, 424 U.S. at 334–35.
[48] *See* ECF No. 59-4.
[49] *See* ECF No. 59-9.
[50] *See* ECF No. 59-14.

appeal to President Watkins.[51] Byron was provided notice of the charges against him and the availability of each stage of review.[52] At each level of review, the reviewer considered the recommendations below, witness testimony, and material that Byron submitted.[53] Furthermore, at the committee hearing, Byron was represented by legal counsel, had the opportunity to present evidence and cross-examine witnesses, and was permitted to appeal the decision to President Watkins.[54] These substantial procedural safeguards are beyond what the Tenth Circuit suggested would satisfy due process in *Watson*.[55]

Byron argues that these procedures were nonetheless inadequate because he "was not provided with any of those opportunities before Vice President McDonald or President Watkins, and . . . they were the true 'decisionmakers.'"[56] But Byron cites to no cases that hold that due process requires additional hearings. Furthermore, given that McDonald and Watkins both considered the committee hearing in making their decisions, the probable value of additional hearings before McDonald and Watkins is modest.[57]

Byron also argues that McDonald deprived Byron of due process when she imposed a different sanction than what was recommended by the committee.[58] While the committee did not recommend suspension after finding that Byron engaged in nonconsensual sexual contact, it

---

[51] *See* ECF No. 59-18.
[52] *See* ECF No. 59-4; ECF No. 59-9; ECF No. 59-14; ECF No. 59-18.
[53] *See id.*
[54] ECF No. 59-3 at Procedure 1-012(III)(B)(5); ECF No. 59-17 at 2.
[55] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242–43 (10th Cir. 2001).
[56] Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, ECF No. 72 at 36–37.
[57] McDonald testified that she listened to portions of the committee hearing when making her decision. ECF No. 59-16 at 17:4–18-11 ("I recall listening to portions. . . . I generally listen to the parts that are the presentation of the witnesses and the parties' responses but not the OEO. Generally the OEO does an overview of what the report is, which I read earlier, so, in general, I skip to the presentation of the parties when I do that."). McDonald further testified that she "read everything in its entirety," ECF No. 59-16 at 21:18–19, which would have included the committee's report.
[58] ECF No. 72 at 37, 38.

specifically found that "the proposed sanctions [were] within the range of reasonable sanctions."[59] After reviewing all the case materials and the committee hearing, McDonald concurred that suspension was "reasonable in light of all the circumstances of this case" and reasoned that "[i]t is a standard sanction of the University for sexual misconduct to suspend a perpetrator for the period of time in which the complaining party can complete his/her/their course of study."[60] McDonald had the authority to impose a sanction within the reasonable range determined by the committee, and did so after considering the relevant case materials and the committee hearing. Thus, an additional hearing before McDonald would do little to avoid the risk of erroneous deprivation of property rights.[61]

Finally, Byron argues that President Watkins deprived Byron of due process by "rubber-stamping" McDonald's decision without providing Byron a meaningful opportunity to present his evidence and arguments and without engaging in a meaningful analysis of the facts of the case.[62] Plaintiff has provided no cases, binding or otherwise, holding that the Fourteenth Amendment requires two hearings in student suspension cases. Moreover, by allowing for an additional appeal from McDonald's decision, the University exceeded what due process requires under *Watson*.[63] Additionally, the evidence of record does not support Byron's contention that President Watkins did not engage in a meaningful analysis of the case, though her testimony

---

[59] ECF No. 59-9 at 4.
[60] ECF No. 59-14 at 2.
[61] Byron also argues that "[i]f the University imposed sanctions against Byron for a 'hostile environment,' then it did so without any advanced notice, complaint, hearing, or any other due process safeguards." ECF No. 72 at 38. But McDonald's decision is predicated on the finding that Byron engaged in "nonconsensual sexual contact" and does not turn on a finding that Byron created a hostile environment. ECF No. 59-14 at 2.
[62] ECF No. 72 at 39–41.
[63] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242–43 (10th Cir. 2001).

suggests that she saw her role as primarily procedural.[64] President Watkins's decision states that she "reviewed Vice President McDonald's decision and the materials that were available to her and to the [OEO] and the Sexual Misconduct Hearing Committee."[65] Ultimately, the record does not suggest that an additional hearing before President Watkins would have reduced the risk of any erroneous deprivation of Byron's property rights.

The final *Matthews* factor is the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[66] There is no evidence of record as to the degree of burden that conducting additional in-person hearings would impose on the University, but a second or third set of in-person hearings, including hearings in front of high-level officials at a large public university, clearly imposes some additional burden on the institution. At the least, this factor does not weigh in favor of Byron.

Considering all three *Matthews* factors, the Defendants did not violate Byron's Fourteenth Amendment procedural due process rights. Although Byron's private property interest in his medical education is substantial, the Defendants implemented a reasonable procedural scheme to avoid erroneous deprivation of these rights. The Defendants' decision to suspend Byron involved review at four distinct levels. Byron was provided notice of each review and was given an in-person hearing in which he was represented by counsel and had the opportunity to present evidence and cross-examine witnesses. Although Byron did not receive an in-person hearing before McDonald or Watkins, both McDonald and Watkins considered the

---

[64] ECF No. 59-10 at 15:23–16:3.
[65] ECF No. 59-18 at 2.
[66] *Matthews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

information that was presented below. As such, the risk of erroneous deprivation of Byron's property rights would not have significantly changed were he afforded further in-person hearings.

The record evidence shows that Plaintiff was heard "at a meaningful time and in a meaningful manner.'"[67] The procedures put in place by the Defendants were sufficient to protect Byron's right to procedural due process. Summary judgment is granted for Defendants on this claim.

## II. The Defendants did not violate Byron's substantive due process rights because their decision to suspend Byron was neither arbitrary, egregious, nor shocked the conscience.

Substantive due process protects individuals against government conduct that "shocks the judicial conscience."[68] This includes decisions that are "arbitrary, lacking a rational basis, or shocking to the conscience of federal judges."[69] "Not all governmental conduct is covered, however, as 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"[70] This high standard requires that the Plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."[71]

Byron has not met this high standard. Byron argues that "McDonald's decision to suspend Byron and Watkins['s] affirmation of that decision were arbitrary, lacked a rational basis, and shocked the conscience" because "[s]uspending Byron and ending his career in

---

[67] *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).
[68] *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).
[69] *Butler v. Rio Ranch Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200–01 (10th Cir. 2003).
[70] *Seegmiller*, 528 F.3d at 767 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).
[71] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998).

medicine bears no rational relationship to the 'nonconsensual sexual contact' in this case."[72] Although the hearing committee did not recommend a two-year suspension, it specifically noted that "the proposed sanctions [were] within the range of reasonable sanctions."[73] Given that the committee found that a sanction of suspension was within the range of reasonable sanctions, it does not shock the conscience that McDonald imposed and Watkins affirmed this sanction. Furthermore, the evidence of record demonstrates that McDonald and Watkins both considered the relevant materials before them before reaching their decisions.[74] These decisions do not approach the level of "the most egregious official conduct," nor are they arbitrary. Accordingly, summary judgment is granted for Defendants on Byron's substantive due process claim.

### III. This court dismissed Byron's claims for monetary relief when it granted in part the Defendants' motion for judgment on the pleadings.

In its ruling on Defendants' motion for judgment on the pleadings, this court determined that Byron could not pursue a claim for monetary relief against the Defendants and that the equitable claims against McDonald and Watkins were not redundant.[75] Thus, the court has already ruled on the issues presented in Sections III and IV of Defendants' motion for summary judgment.

### ORDER

The undisputed material facts demonstrate that the Defendants did not violate Byron's procedural or substantive due process rights under the Fourteenth Amendment to the United States Constitution. The Defendants' Motion for Summary Judgment is GRANTED.

---

[72] ECF No. 72 at 42.
[73] ECF No. 59-9 at 4.
[74] ECF No. 59-14 at 1; ECF No. 59-18 at 1; ECF No. 59-16 at 16:13–15, 17:4–18-11, 19:3–9; ECF No. 59-15 at 7–8; ECF No. 15-10 at 12:14–25.
[75] ECF No. 74 at 1.

Signed January 5, 2022.

                                 BY THE COURT

                                 _____

                                 David Barlow
                                 United States District Judge